IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GARY PLOOF, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 13-294-LPS |
| | : | |
| DANA METZGER, Warden, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents. | : | |

___

**MEMORANDUM**

**I.   INTRODUCTION**

Petitioner has filed a Motion to Disqualify the Delaware Attorney General's Office as counsel for the State. (D.I. 94) He argues that his former post-conviction attorney, Ms. Kathryn Garrison, has a conflict based on her interests in ensuring Petitioner's interests (as her former client) are not harmed, while also protecting the Delaware Department of Justice's ("DDOJ") interests (as her current employer) and advancing her career with DDOJ. (D.I. 94 at 5) Petitioner further contends that Ms. Garrison's conflict should be imputed to the entire Delaware Attorney General's Office, thereby providing grounds for disqualifying that Office. (*Id.*) For the reasons set forth below, the Court will deny the Motion.

**II.   BACKGROUND**

On June 16, 2003, a Delaware Superior Court jury found Petitioner guilty of first degree murder and possession of a firearm during the commission of a felony. *See Ploof v. State*, 856 A.2d

539, 541 (Del. 2004).  The Superior Court sentenced Petitioner to death on August 22, 2003.  *See id.*  The Delaware Supreme Court affirmed Petitioner's convictions and capital sentence on August 11, 2004.  *See id.* at 548.

> On July 6, 2005, [Petitioner] filed a timely *pro se* motion for postconviction relief under the version of Delaware Superior Court Criminal Rule 61 ("Rule 61") in effect at the time. On September 2, 2005, the Superior Court appointed Ronald Poliquin, Esquire to represent [Petitioner] in postconviction. On January 13, 2006, [Petitioner's] trial counsel submitted affidavits addressing [his] claims of ineffective assistance of counsel. On February 17, 2006, the State responded to [Petitioner's Rule 61] motion, and [Petitioner's] postconviction counsel submitted a supplement and reply on March 27, 2006. On May 30, 2006, postconviction counsel notified the Superior Court that he had a conflict of interest and could no longer represent [Petitioner]. The Superior Court substituted Valerie Dunkle, Esquire, Thomas Donovan, Esquire and James Liguori, Esquire for Mr. Poloquin as [Petitioner's] postconviction counsel. On October 27, 2006, the Superior Court appointed Kathryn Garrison, Esquire to replace Ms. Dunkle as [Petitioner's] counsel. On June 6, 2008, [Petitioner's] new postconviction counsel filed a motion to amend his postconviction motion to include additional claims along with points of law, which counsel corrected on June 9, 2008. Then, on July 21, 2008, [Petitioner's] postconviction counsel filed a corrected amended motion for postconviction relief and points of law, which the State answered on July 31, 2008. On October 1, 2008, [Petitioner] filed his reply. On December 24, 2009, counsel with the [the Federal Community Defender's Capital Habeas Unit for the Eastern District of Pennsylvania] were admitted *pro hac* vice to also assist [Petitioner] in his postconviction proceeding. On November 22, 2010, the Superior Court held a six-day evidentiary hearing on [Petitioner's] postconviction motion. Following additional briefing by the parties, on January 30, 2012, the Superior Court issued an order and opinion denying [Petitioner's first Rule 61] motion. [Petitioner] appealed the Superior Court's denial of postconviction relief to the Delaware Supreme Court. On June 4, 2013, the Delaware Supreme Court affirmed in part the Superior Court's judgment, but remanded the case to the Superior Court to reweigh the sum of the aggravating and mitigating evidence during the penalty phase in view of [Petitioner's] claims that his trial counsel were ineffective for not presenting additional evidence about [his] military service and that [he] grew up in an abusive home. On July 15, 2013, the Superior Court issued findings of fact and conclusions of law from the reweighing process and concluded that [Petitioner's] ineffectiveness claims were meritless because "[Petitioner] has failed to show a reasonable probability of a different outcome." On October 30, 2013, the Delaware Supreme

> Court affirmed the Superior Court's denial of postconviction relief. On November 5, 2013, the Superior Court reimposed [Petitioner's] death sentence.

(D.I. 66 at 2-3)

> On November 6, 2013, Ms. Garrison submitted a letter to the Superior Court, which became part of the public docket, advising that she was now working for the Delaware Department of Justice's ("DDOJ") Appeals Unit and could no longer represent [Petitioner]. On the following day, November 7, 2013, the Superior Court approved Ms. Garrison's request to withdraw as [Petitioner's] counsel.

(D.I. 95 at 4-5)

In January 2014, the Office of the Federal Public Defender for the District of Delaware ("Delaware FPDO") filed in this Court a petition for a writ of habeas corpus ("Petition") on Petitioner's behalf. (D.I. 7) The Petition was stayed in December 2014 under a stipulated order to permit Petitioner to present certain unexhausted claims in the Delaware courts in a second Rule 61 motion. (D.I. 24) In December 2017, the Superior Court summarily dismissed Petitioner's second Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *See State v. Ploof*, 2017 WL 7804294 (Del. Super. Ct. Dec. 28, 2017); *Ploof v. State*, 194 A.3d 908 (Table), 2018 WL 4600814 (Del. Sept. 18, 2018).

In April 2019, the Delaware FPDO filed an amended federal habeas Petition on Petitioner's behalf. (D.I. 59) In January 2020, the State filed an Answer substantively addressing Petitioner's claims as well as exhaustion, procedural default, and the merits of the claims. (D.I. 66) The Delaware FPDO was granted several extensions of time to file a traverse. (D.I. 71; D.I. 73; D.I. 74) In December 2020, the Delaware FPDO withdrew from the instant case and counsel from the Federal Public Defender for the Middle District of Pennsylvania ("Pennsylvania FPDO") was appointed to represent Petitioner. (D.I. 78; D.I. 81) Two more unopposed extensions of time for Petitioner to file his traverse/reply were granted. (D.I. 82; D.I. 86)

On July 20, 2021, the Pennsylvania FPDO filed a notice of conflict of interest and request for a teleconference. (D.I. 88) The Court held a teleconference with both Parties on September 10, 2021. (D.I. 90; DI. 91)[1] On October 1, 2021, the State filed a follow-up letter response regarding certain issues discussed during the teleconference, asserting (1) there is no conflict of interest imputable to the entire DDOJ[2] based on Ms. Garrison's prior representation of Petitioner, for reasons including she has been sequestered from the case and other Appeals Unit deputies have handled Petitioner's matters; and (2) "[i]n the case of a conflict, which only happens occasionally in the civil context, the DDOJ, to the extent possible, retains outside counsel and screens them in compliance with the Delaware Lawyers' Rules of Professional Conduct." (D.I. 93 at 1) The State also asserted that the DDOJ would not interfere with efforts by the Pennsylvania FPDO to communicate with Ms. Garrison. (D.I. 93 at 1-2)

On October 13, 2021, Petitioner filed the Motion to Disqualify the Delaware Attorney General's Office as counsel for the State, which is presently pending before the Court. (D.I. 94) The State filed an Answer in Opposition, to which Petitioner filed a Reply. (D.I. 95; D.I. 96)

---

[1] On the same date, the Court also had an *ex parte* conversation with Petitioner's counsel from the Pennsylvania FPDO. Petitioner's counsel had requested the opportunity to speak *ex parte* and Respondent did not oppose. A court reporter took down what was said during the *ex parte* conversation and a transcript can be prepared should it ever be necessary. The details of what was discussed have not been shared with Respondent. In the Court's view, nothing relating to the topics of the *ex parte* conversation has had any impact on the issues presented by the pending motion and would not (and will not) have any impact on the issues presented in the Petition. Accordingly, Petitioner's request for discovery relating to issues discussed in the *ex parte* portion of the September 10, 2021 status conference (as contained in an *ex parte* letter submitted to the Court on September 17, 2021, with the Court's consent), is denied.

[2] Both Parties use the terms "DDOJ" and "Delaware's Attorney General's Office" interchangeably. For the purposes of this Memorandum and Order, the Court also uses both terms interchangeably when referring to counsel for the State.

### III. LEGAL STANDARDS

The Court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Motions to disqualify are "generally disfavored" and, therefore, require the moving party to clearly show that "continued representation would be impermissible." *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F. Supp. 2d 510, 513 (D. Del. 2007); *see also Conley v. Chaffinch*, 431 F. Supp. 2d 494, 496 (D. Del. 2006). Attorney conduct is governed by the ethical standards of the court before which the attorney appears. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984). The District of Delaware has adopted the ABA's Model Rules of Professional Conduct ("M.R.P.C."). *See* D. Del. LR 83.6(d).[3]

### IV. DISCUSSION

In his Motion to Disqualify, Petitioner contends that Ms. Garrison has a conflict based on her interests in ensuring that Petitioner's interests are not harmed as her former client, protecting the DDOJ's interests, and advancing her career with the DDOJ. (D.I. 94 at 5) According to Petitioner, since the State asserts procedural default as a defense to many of his habeas claims, "Ms. Garrison is a material witness with interests in this case, and those interests are thoroughly entangled with her employment with, and supervision by, counsel for" the State. (D.I. 96 at 2) Petitioner contends that the "only way to ensure [he] can fairly pursue his responses to [the State's] procedural defenses is to remove those interests by disqualifying the [Office of the] Attorney General" as counsel the State.

---

[3]The Court notes that the Parties refer exclusively to Delaware's Lawyers' Rules of Professional Conduct ("Delaware's L.R.P.C") rather than to the ABA's M.R.P.C. Delaware's L.R.P.C. are patterned after the M.R.P.C., and the language used in the ethical Rules relevant to the conflict of interest issue in this proceeding is almost identical under the M.R.P.C. and Delaware's L.R.P.C. *Compare* M.R.P.C. Rules 1.7-1.11 *with* Delaware's L.R.P.C. Rules 1.7-1.11; *see also In re Intel Corp. Microprocessor Antitrust Litigation*, 526 F. Supp. 2d 461, 465 n.4 (D. Del. 2007); *United States v. Gordon*, 334 F. Supp. 2d 581, 585 n.7 (D. Del. 2004) (explaining that "Model Rules and the Delaware Rules are the same."). Thus, the Court will refer to the M.R.P.C.

(D.I. 96 at 2) Therefore, Petitioner asks the Court to enter an "order directing the Attorney General . . . to exercise its authority to appoint a special Deputy Attorney General to represent [the State] in this matter, and to disqualify the Office of the Attorney General" as counsel for the State. (D.I. 94 at 9)

The State contends that the Court should deny Petitioner's Motion to Disqualify, because: (1) Petitioner waived his conflict of interest claim by waiting eight years after Ms. Garrison publicly advised the Delaware Superior Court in November 2013 that she was recently employed by the DDOJ (D.I. 95 at 5); and (2) Petitioner has failed to demonstrate "by clear and convincing evidence that there is a conflict of interest imputable to the entire DDOJ . . . and that he will suffer prejudice." (D.I. 95 at 11)

### A. Waiver

"Waiver is a valid basis for denial of a motion to disqualify." *Conley v. Chaffinch,* 431 F. Supp. 2d 494, 498-99 (D. Del. 2006). "In determining whether the moving party has waived its right to object to the opposing party's counsel the court should consider the length of the delay in bringing a motion to disqualify, when the movant learned of the conflict, whether the movant was represented by counsel during the delay, why the delay occurred, and whether disqualification would result in prejudice to the nonmoving party." *Id.* at 499.

After considering the factors set forth in *Conley*, the Court concludes that Petitioner has waived the instant conflict-of-interest/disqualification argument. First, Petitioner filed the instant Motion to Disqualify in October 2021, almost eight full years after Ms. Garrison filed a letter in the Superior Court providing notice that she was working at the DDOJ and requesting to withdraw her representation of Petitioner. (*See* D.I. 67-1 at 38, Entry No. 325) The instant Motion was also filed seven years after the Delaware FPDO filed Petitioner's initial habeas Petition in this Court in 2014. A seven- or eight-year delay is sufficient to justify a finding of waiver, especially since Petitioner has

been continuously represented by counsel during the pendency of his state criminal proceedings and this proceeding. *See Conley*, 431 F. Supp. 2d at 498.

Second, Petitioner argues that he did not delay in filing the instant Motion to Disqualify, because he only became aware of the relevant "enhanced" conflict of interest forming the basis for the Motion to Disqualify – namely, Ms. Garrison's potential role as a witness – when the State asserted the defense of procedural default in the Answer it filed in 2020. According to Petitioner, the conflict of interest created by Ms. Garrison's employment with the DDOJ in 2013 differs from the "enhanced" conflict of interest created by Ms. Garrison's new role as a potential witness, and it would be "nonsensical" to require him to raise a conflict before it actually existed. The Court is not persuaded. Petitioner does not provide any legal authority supporting his approach of identifying different degrees of conflicts arising at two different periods during Petitioner's continued litigation concerning the same crimes and convictions. Distilled to its core, Petitioner's attempt to create two different types or levels of triggering conflicts of interest is a splitting of semantic hairs. Instead, the Court views the original conflict of interest that was created when Petitioner joined the DDOJ as continuing until the issues concerning the same crimes and convictions are dispositively adjudicated.

Additionally, the Court notes that procedural default is a common and routine defense raised in federal habeas proceedings, with the ineffective assistance of counsel during a petitioner's initial collateral review proceeding often being raised as a method for establishing cause for a procedural default. *See e.g. Martinez v. Ryan*, 566 U.S. 1 (2012). In fact, Petitioner's original Petition includes a general claim alleging that post-conviction counsel provided ineffective assistance during Petitioner's collateral proceeding by failing to advance all available legal claims or all available legal bases for claims that were advanced. (D.I. 7 at 230) These circumstances demonstrate that Petitioner was

7

aware of the so-called "enhanced" conflict of interest forming the basis for his disqualification request long before the State filed its Answer in 2020.[4]

Turning to the next *Conley* factor, the reason for the delay, Petitioner contends that the failure to raise the issue of Ms. Garrison's "enhanced" conflict of interest at an earlier time is due to the Delaware FPDO's ineffectiveness. (D.I. 96 at 5 n.1) The Court will not speculate as to the reason for the Delaware FPDO's "failure" to raise the instant conflict of interest issue.[5] Nevertheless, the Court does not view the delay as a tactic.

---

[4]Relatedly, Petitioner asserts,

> If Ms. Garrison's status as a witness existed at some earlier date, then perhaps [the State's] argument [concerning the date on which Petitioner became aware of the conflict] would carry some weight, at least facially. However, at that point the matter would turn on whether Petitioner waived that conflict. Any waiver of such a critical right on Petitioner's part cannot be implied by the inactions of the [Delaware FPDO]. *E.g.* DE Rules of Professional Conduct, Rule 1.7, comment 22 (attorney may go only so far as "request[ing]" that a client waives conflict); Rule 1.9, comment 9 (conflicts concerning former clients can only be waived by client in writing). Upon information and belief, at no point did any member of the [Delaware FPDO] recognize the existence of any conflict of interest and obtain a waiver, and the files obtained from that office contain no such document. No written waiver has been provided to this Court. Thus, Petitioner has not waived this conflict.

(D.I. 96 at 5 n.1)

Petitioner's argument is premised on an incorrect application of Rule 1.9(a) to the current situation. Rule 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." M.R.C.P. Rule 1.9(a). Here, although Ms. Garrison became a DDOJ employee in November 2013, she has not "represented" the State in any of Petitioner's continuing criminal matters since that date. Therefore, the failure to obtain Petitioner's written consent is not relevant to the instant waiver analysis.

[5]While not addressed by Petitioner, the Delaware FPDO's "failure" to file a motion to disqualify the DDOJ may have been due to a reasoned determination that there was no conflict of interest that could form the basis of a meritorious motion for disqualification.

8

With regard to the last of the *Conley* factors, the State would be prejudiced if the Delaware's Attorney General's Office is disqualified from continuing to represent the State in this matter. Delaware's Attorney General's Office has been litigating the instant habeas case since 2014, devoting significant resources to drafting an extensive 216 page Answer to the Petition. In addition, Delaware's Attorney General's Office has been involved in all of Petitioner's underlying state criminal proceedings since 2002. The State would suffer prejudice if the DDOJ was removed as counsel at this juncture.

In sum, after weighing the applicable factors, the Court concludes that Petitioner has waived his conflict of interest claim and, therefore, his grounds for disqualification.

### B. Imputation of Ms. Garrison's Conflict of Interest

The Parties agree that Ms. Garrison is personally disqualified from participating in Petitioner's state or federal post-conviction proceedings occurring after November 2013. (D.I. 95 at 11; D.I. 95-1, at ¶ 7; D.I. 96 at 4) They disagree as to whether Ms. Garrison's personal disqualification/conflict of interest can be imputed to the Delaware's Attorney General's Office.

There "is no rule or controlling authority that compels the vicarious disqualification of a prosecutor's office based on an individual attorney's personal conflict,"[6] and neither the Third Circuit nor Delaware courts apply a *per se* conflict of interest rule. *See, e.g., Euell v. Rosemeyer*, 153 F.R.D. 576, 578-79 (W.D. Pa. 1993) (rejecting Federal Defender's motion to disqualify entire district attorney's office from representing Commonwealth in habeas proceeding, after noting that Pennsylvania's Rule of Professional Conduct 1.11 did not automatically require disqualification of other lawyers in agency in which lawyer in question has become associated); *Hitchens v. State,* 2007 WL 2229020, at *4 (Del. July 26, 1998) (noting lack of *per se* conflict of interest rule and declining to

---

[6] *United States v. Nosal*, 2009 WL 482236, at *2 (N.D. Cal. Feb. 25, 2009.)

9

find conflict of interest based on defense counsel, who had prosecuted defendant, representing defendant in violation of probation proceeding after leaving DDOJ). Rather, courts in Delaware and the Third Circuit view disqualification as an extreme remedy available only in limited circumstances. *See United States v. Zagami*, 374 F. App'x 295, 297 (3d Cir. 2010) ("Instances in which the courts have found it necessary to disqualify a particular United States Attorney are rare."); *Harper v. Beacon Air, Inc.*, 2017 WL 838224, at *3 (Del. Super. Ct. Mar. 2, 2017) ("[D]isqualification of counsel is an extreme remedy that should be employed only when necessary to ensure the fairness of the litigation process."). Significantly,

> [r]esolving the question of whether to disqualify counsel requires the Court to carefully sift all the facts and circumstances. Indeed, whether disqualification is appropriate depends on the facts of the case and is never automatic. The required inquiry necessarily involves a painstaking analysis of the facts. Furthermore, the Court approaches motions to disqualify counsel with cautious scrutiny, mindful of a litigant's right to the counsel of its choice.

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd*, 2011 WL 2692968, *4-6 (D. Del. June 22, 2011) (cleaned up).

Given the absence of any precedent squarely on point, the Court turns to the ABA's Model Rules of Professional Conduct for initial guidance. Rule 1.11(d) of the M.R.P.C. governs conflicts of interest for current government lawyers, and Rule 1.11(d)(1) provides that a current government lawyer "is subject to Rules 1.7 [concerning conflicts of interest for current clients] and 1.9 [concerning duties to former clients]." Particularly relevant to the instant issue is Comment 2 to Rule 1.11, which provides:

> Rule 1.10 is not applicable to the conflicts of interest addressed by this Rule. Rather, paragraph (b) sets forth a special imputation rule for former government lawyers that provides for screening and notice. **Because of the special problems raised by imputation within a government agency, [Rule 1.11(d)] does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or**

10

> ***employees, although ordinarily it will be prudent to screen such lawyers.***

M.R.P.C. Rule 1.11 cmt. 2 (emphasis added).  Comment 11 to Rule 1.10 also addresses the imputation of a government lawyer's conflict of interest, providing that:

> Under Rule 1.11(d), where a lawyer represents the government after having served clients in private practice . . ., former client conflicts are not imputed to government lawyers associated with the individually disqualified lawyer.

M.R.P.C. Rule 1.10 cmt. 11

The record in this case reveals that screening procedures were implemented when Ms. Garrison joined the DDOJ in November 2013, and the screening procedures successfully prevented the disclosure of confidential information from Ms. Garrison to the DDOJ.  For instance, in her affidavit, Ms. Garrison explains that her supervisors at the DDOJ

> understood that [she] was prohibited from working on cases involving [her] prior clients, including [Petitioner].  During [her] tenure with DDOJ, [she has] never discussed the substance of [her] representation of [Petitioner] with [her] coworkers or supervisors.  And, except for the conversations outlined below, limited to discussions of [her] availability as a witness in these proceedings, neither [her] coworkers nor [her] supervisors have ever discussed the substance of [Petitioner's] case with her.  Additionally, [her] offices in Kent and Sussex County are physically separated from the New Castle County attorneys handling [Petitioner's] habeas case.

(D.I. 95-1 at 2)  Additionally, Petitioner does not allege that Ms. Garrison revealed any confidential information to the DDOJ or that the DDOJ used any confidential information Ms. Garrison acquired from Petitioner while she was his post-conviction counsel.

Based on the foregoing, the Court concludes that the screening measures implemented upon Ms. Garrison's employment with the DDOJ complied with the requirements set forth in Comment 2 to Rule 1.11.  Accordingly, there is no basis under the M.R.P.C. for Ms. Garrison's personal conflict of interest to be imputed to the entire DDOJ in this case.

11

Reviewing Petitioner's arguments under the generalized standards articulated in relevant Delaware and Third Circuit cases leads the Court to the same conclusion. For instance, the Third Circuit has determined that "[t]he disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except where necessary." *Zagami*, 374 F. App'x at 297. While there have been instances in which an entire prosecutor's office has been disqualified in federal courts, the weight of authority in the Third Circuit indicates that courts have generally declined to disqualify an entire government agency from representing litigants in habeas proceedings where, as here, attorneys who had formerly represented petitioners had adequately screened themselves from the matter and had avoided any actual impropriety. *See Euell v. Rosemeyer*, 40 153 F.R.D. 576, 577 (W.D. Pa. 1993); *Wright v. Lamas,* 2019 WL 1496055, at *1, 4 (E.D. Pa. Mar. 29, 2019).

Similarly, under Delaware law, "the Court reviewing the motion must weigh the effect of any alleged conflict on the fairness and integrity of the proceedings before disqualifying the challenged counsel." *Harper*, 2017 WL 838224, at *3. When assessing the alleged conflict's effect on the fairness of the proceeding, Delaware courts consider the extent of the challenged counsel's involvement in the movant's proceeding as well as whether there has been an exchange of confidential information. *See, e.g., IMC Global, Inc. v. Moffett*, 1998 WL 842312, at *2-3 (Del. Ch. Nov. 12, 1998) (declining to find threat to fairness of proceedings where, although exchange of information had taken place with contested firms, information did not strike court as "necessarily privileged or particularly important from a fairness perspective to Plaintiff's litigation position"); *Dollar Tree, Inc. v. Dollar Express LLC*, 2017 WL 5624298, at *6-7 (Del. Ch. Nov. 21, 2017) (declining to find prejudice to fairness of proceedings where, *inter alia*, attorneys had not accessed information from matter in which firm had conflict, firm implemented ethical screen going forward, and attorneys in separate matter had no involvement in present litigation).

When assessed under the foregoing legal framework, Petitioner's arguments fail to establish that the DDOJ's continued representation of the State will prejudice the fairness and integrity of his habeas proceeding. Although he contends that Ms. Garrison's potential role as a witness in this proceeding warrants disqualifying the entire DDOJ as counsel for the State, Petitioner has not provided any caselaw, legal rule, or written institutional ethical opinion to support his argument.[7] Petitioner's primary concern appears to be his ability "to investigate, interview, and call Ms. Garrison to testify on the issue of her representation of Petitioner." (D.I. 96 at 7-8) Yet, the State's October 1, 2021 letter addresses this concern and explicitly provides that

> [t]he DDOJ appreciates that Ms. Garrison has ethical duties to [Petitioner] which may result in her being a witness in this case. The DDOJ will not interfere with efforts by [Petitioner's] counsel to communicate with Ms. Garrison and supports her cooperating with counsel as she discharges those duties.

(D.I. 93 at 2) Petitioner's argument that Ms. Garrison's potential role as a witness renders her an individual with divided loyalties is rebutted by the State's October 1, 2021 letter expressly providing that the DDOJ understands Ms. Garrison's ethical duties and that she may be required to be a witness.

Petitioner's argument that Ms. Garrison will face an "impossible dilemma" if she is called as a witness in this proceeding, due to her alleged competing professional and personal interests, also fails to demonstrate that the DDOJ's continued representation will prejudice the fairness of the case. The "impossible dilemma" identified by Petitioner is not unique to a situation where, as here, a petitioner's former post-conviction counsel becomes an employee of a government's prosecutorial

---

[7]Petitioner has provided the "opinion of an established legal ethics expert" (Professor Abbe Smith) to support his argument. (D.I. 94 at 5; D.I. 94-2) Whatever weight this opinion (which does not mention Rule 1.11 of the ABA's M.R.C.P. or Delaware's L.R.P.C.) should receive, it does not persuade the Court of a different outcome than that announced herein.

13

team. As explained by the American Bar Association ("ABA"), the relationships between lawyers in government agencies differ from those within private firms, because

> [t]he salaried government employee does not have the financial interest in the success of departmental representation that is inherent in private practice. This important difference in the adversary posture of the government lawyer is recognized by Canon 7: the duty of the public prosecutor to seek justice, not merely to convict, and the duty of all government lawyers to seek just results rather than the result desired by a client. The channeling of advocacy toward a just result as opposed to vindication of a particular claim lessens the temptation to circumvent the disciplinary rules through the action of associates. Accordingly, we construe DR 5-105(D) to be inapplicable to other government lawyers associated with a particular government lawyer who is himself disqualified by reason of DR 4-101, DR 5-105, DR 9-101(B), or similar Disciplinary Rules.

ABA, Committee on Ethics & Professional Responsibility, Formal Opinion # 342 (1975).

For all of these reasons, the Court concludes Petitioner has failed to demonstrate a disqualifying conflict of interest imputable to the entire DDOJ.

## V. CONCLUSION

For the reasons set forth above, the Court will deny Petitioner's Motion to Disqualify the DDOJ from representing the State, both because (1) he waived any conflict of interest by failing to raise the issue in a timely manner; and (2) he has failed to demonstrate a disqualifying conflict of interest imputable to the DDOJ. A separate Order will be entered.

March 31, 2022  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES CIRCUIT JUDGE